# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Number 05-447C
Judge Nancy B. Firestone

**SMART BUSINESS MACHINES,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Cyrus E. Phillips, IV
1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Attorney of record for Plaintiff,
Smart Business Machines.

July 6th, 2005

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... ii-iii

QUESTIONS INVOLVED ..... 1

I. WHETHER THE CONTRACTING OFFICER'S UNILATERAL DECLARATION THAT THE PURCHASE ORDER HAS "LAPSED" IS AN ADEQUATE BASIS FOR TUCKER ACT JURISDICTION OVER A CONTRACT DISPUTES MATTER? ..... 1

II. ON CONTRACT DISPUTES MATTERS, WHETHER THIS COURT HAS TUCKER ACT JURISDICTION OVER GOVERNMENT CLAIMS AS WELL AS TUCKER ACT JURISDICTION OVER CONTRACTOR CLAIMS? ..... 1

STATEMENT OF THE CASE ..... 1-7

ARGUMENT ..... 7-14

I. THE CONTRACTING OFFICER'S UNILATERAL DECLARATION THAT PURCHASE ORDER NUMBER SPO750-04-M-D325 HAS "LAPSED" IS AN ADEQUATE BASIS FOR TUCKER ACT JURISDICTION OVER A CONTRACT DISPUTES MATTER ..... 7-12

II. ON CONTRACT DISPUTES ACT MATTERS, THIS COURT HAS TUCKER ACT JURISDICTION OVER GOVERNMENT CLAIMS JUST AS THIS COURT HAS TUCKER ACT JURISDICTION OVER CONTRACTOR CLAIMS. ..... 12-14

CONCLUSION ..... 15

CERTIFICATE OF SERVICE ..... 16

# TABLE OF AUTHORITIES

<u>**STATUTES**</u>

28 U.S.C. § 1491(a)(2) ........ 8

41 U.S.C. §§ 601-613 ........ 2

41 U.S.C. § 601(2) ........ 2

41 U.S.C. § 601(4) ........ 1

41 U.S.C. § 602(a)(1) ........ 2

41 U.S.C. § 605(a) ........ 12, 14

41 U.S.C. § 606 ........ 8

41 U.S.C. § 609(a)(1) ........ 8

41 U.S.C. § 609(a)(3) ........ 8

<u>**REGULATIONS**</u>

Federal Acquisition Regulation 13.004 ........ 5

Federal Acquisition Regulation 13.302-4 ........ 6-7, 14

Federal Acquisition Regulation 52.233-1 ........ 4

<u>**CASES**</u>

*Alliant Techsystems, Inc. v. United States*,
178 F.3d 1260 (Fed. Cir. 1999) ........ 10-11

*Deponte Investments, Inc. v. United States*,
54 Fed. Cl. 112 (2002) ........ 8, 9-10

*Deponte Investments, Inc. v. General Services Administration*,
GSBCA No. 15601, August 13th, 2001, 2001 GSBCA LEXIS 209. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Kit-San-Azusa v. United States*,
Fed. Cir. Nos. 95-5070, 95-5079, May 7th, 1996 (unpublished), 1996 U.S. App. LEXIS 10370. . . . . . . .13-14

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## QUESTIONS INVOLVED

I. Whether the Contracting Officer's unilateral declaration that the Purchase Order has "lapsed" is an adequate basis for Tucker Act jurisdiction over this Contract Disputes Act matter?

II. On Contract Disputes Act matters, whether this Court has Tucker Act jurisdiction over Government claims as well as Tucker Act Jurisdiction over Contractor claims?

## STATEMENT OF THE CASE

**Parties**.

Smart Business Machines is an Ohio sole proprietorship. Smart Business Machines is the awardee of Purchase Order Number SPO750-04-M-D325, and thus a proper "Contractor" under the Contract Disputes Act, 41 U.S.C. § 601(4). Purchase Order Number SPO750-04-M-D325 was issued on November 26th, 2003 by a Contracting Officer at Defense Supply Center Columbus, a field activity of the Defense Logistics Agency at Columbus, Ohio. Defense Logistics Agency is a United States Department of Defense Agency. Defendants Defense Supply Center Columbus, Defense Logistics Agency, and the United States Department of Defense are agencies and entities of the United States, and the United States Department of Defense is a proper "Executive Agency" under the Contract

Disputes Act, 41 U.S.C. § 601(2). Purchase Order Number SPO750-04-M-D325 is an express unilateral option contract entered into by an Executive Agency for the procurement of property, and thus an Executive Agency Contract to which the Contract Disputes Act applies, 41 U.S.C. § 602(a)(1). Complaint, ¶ 2.

**<u>The Unilateral Purchase Order</u>**.

On November 26th, 2003 a Contracting Officer at Defense Supply Center Columbus issued Purchase Order Number SPO750-04-M-D325 to Smart Business Machines. As issued, Purchase Order Number SPO750-04-M-D325 is a unilateral offer subject to the Contract Disputes Act, 41 U.S.C. §§ 601-613. Purchase Order Number SPO750-04-M-D325 contains the Disputes (July 2002) clause:

**Disputes (July 2002)**

> (a) This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613).
>
> (b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.
>
> (c) *"Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract*. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the Act until certified. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

(d)(1) A claim by the Contractor shall be made in writing and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision. *A claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer*.

(2)(i) The contractor shall provide the certification specified in paragraph (d)(2)(iii) of this clause when submitting any claim exceeding $100,000.

(ii) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.

(iii) The certification shall state as follows: "I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor."

(3) The certification may be executed by any person duly authorized to bind the Contractor with respect to the claim.

(e) For Contractor claims of $100,000 or less, the Contracting Officer must, if requested in writing by the Contractor, render a decision within 60 days of the request. For Contractor-certified claims over $100,000, the Contracting Officer must, within 60 days, decide the claim or notify the Contractor of the date by which the decision will be made.

(f) The Contracting Officer's decision shall be final unless the Contractor appeals or files a suit as provided in the Act.

(g) If the claim by the Contractor is submitted to the Contracting Officer or a claim by the Government is presented to the Contractor, the parties, by mutual consent, may agree to use alternative dispute resolution (ADR). If the Contractor refuses an offer for ADR, the Contractor shall inform the Contracting Officer, in writing, of the Contractor's specific reasons for rejecting the offer.

(h) The Government shall pay interest on the amount found due and unpaid from

(1) the date that the Contracting Officer receives the claim (certified, if required); or

(2) the date that payment otherwise would be due, if that date is later, until the date of payment.

With regard to claims having defective certifications, as defined in FAR 33.201, interest shall be paid from the date that the Contracting Officer initially receives the claim. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the Contracting

> Officer receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim.
>
> (i) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting Officer.

Federal Acquisition Regulation [48 C.F.R.] 52.233-1(emphasis added); Complaint, ¶ 5.

Purchase Order Number SPO750-04-M-D325 requires delivery of other than commercial items, *viz*. one-hundred fifty-five cast steel driving-nondriving wheel spindles to be built to designated United States Army Tank-Automotive Command drawings and to be inspected in accordance with Department of Defense Handbook MIL-HDBK-1265, entitled "Radiographic Inspection, Classification and Soundness Requirements for Steel Castings," dated August 19th, 1998. Delivery was to be made on or before March 30th, 2004. Inspection and acceptance of these one-hundred fifty-five cast steel driving-nondriving wheel spindles, other than commercial items, is to be at origin, at Smart Business Machines' production facility in Eastlake, Ohio. Upon delivery, Smart Business Machines is to be paid $397.00 for each of these cast steel driving-nondriving wheel spindles, other than commercial items, or $61,535 total for one-hundred fifty-five cast steel driving-nondriving wheel spindles, other than commercial items. Complaint, ¶ 6.

**<u>Substantial Performance</u>**.

By March 19th, 2004 Smart Business Machines had substantially performed Purchase Order Number SPO750-04-M-D325. Smart Business Machines had by then received the completed steel castings at a cost of some $15,500, and had machined two of the cast steel cast steel driving-nondriv-

ing wheel spindles and was ready to assemble these components, at a cost of some $4,000.00. Representatives of the Administrative Contracting Officer had visited Smart Business Machines' Eastlake, Ohio production facility and were aware that Smart Business Machines had proceeded with the work to the point that substantial performance had occurred. Complaint, ¶ 7.

The Federal Acquisition Regulation provides:

> (a) A quotation is not an offer and, consequently, cannot be accepted by the Government to form a binding contract. *Therefore, issuance by the Government of an order in response to a supplier's quotation does not establish a contract. The order is an offer by the Government to the supplier to buy certain supplies or services upon specified terms and conditions. A contract is established when the supplier accepts the offer.*
>
> (b) When appropriate, the contracting officer may ask the supplier to indicate acceptance of an order by notification to the Government, preferably in writing, as defined at 2.101. *In other circumstances, the supplier may indicate acceptance by furnishing the supplies or services ordered or by proceeding with the work to the point where substantial performance has occurred.*
>
> (c) If the Government issues an order resulting from a quotation, the Government may (by written notice to the supplier, at any time before acceptance occurs) withdraw, amend, or cancel its offer. (See 13.302-4 for procedures on termination or cancellation of purchase orders.)

Federal Acquisition Regulation [48 C.F.R.] 13.004, "Legal Effect of Quotations" (emphasis added).

**<u>The Unlawful Termination</u>**.

On Monday, April 5th, 2004 the Defendants' Contracting Officer wrote Smart Business Machines that:

The above cited purchase order was an offer to purchase the supplies described therein provided that delivery was made by 03/30/2004. Since that date was not met, the Government's offer to purchase has lapsed. No deliveries will be accepted by the Government under this order for the CLIN(s):

| CLIN | NSN/Part Number | From Quantity | To Quantity | Destination |
|---|---|---|---|---|
| 0001 | 2530-01-102-4765 | 12 | 0 | SW3218 |
| 0002 | 2530-01-102-4765 | 100 | 0 | W25G1U |
| 0003 | 2530-01-102-4765 | 43 | 0 | W62G2T |

Total amount of contract/order is ( ) increased (X) decreased by $61535.00 from $61535.00 to $ 0.00.

*Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains in full force and effect.*

Purchase Order Number SPO750-04-M-D325, Modification Number P00001, April 5th, 2004 (emphasis added). Smart Business Machines received a facsimile of this Modification Number P00001 on the day that it was issued, Monday, April 5th, 2004. Complaint, ¶ 8.

As to terminations or cancellations of Purchase Orders, the Federal Acquisition Regulation provides:

(a) If a purchase order that has been accepted in writing by the contractor is to be terminated, the contracting officer shall process the termination in accordance with—
(1) 12.403(d) and 52.212-4(l) for commercial items; or
(2) Part 49 or 52.213-4 for other than commercial items.

(b) *If a purchase order that has not been accepted in writing by the contractor is to be canceled, the contracting officer shall notify the contractor in writing that the purchase order has been canceled, request the contractor's written acceptance of the cancellation, and proceed as follows*:

> (1) If the contractor accepts the cancellation and does not claim that costs were incurred as a result of beginning performance under the purchase order, no further action is required (*i.e.*, the purchase order shall be considered canceled).
>
> (2) *If the contractor does not accept the cancellation or claims that costs were incurred as a result of beginning performance under the purchase order, the contracting officer shall process the termination action as prescribed in paragraph (a) of this subsection.*

Federal Acquisition Regulation [48 C.F.R.] 13.302-4, "Termination or Cancellation of Purchase Orders" (emphasis added).

The Contracting Officer at Defense Supply Center Columbus did not, as required by Federal Acquisition Regulation 13.302-4(b), request Smart Business Machines' written acceptance of the cancellation before unilaterally declaring that Purchase Order Number SPO750-04-M-D325 has "lapsed." Complaint, ¶ 14.

---

## ARGUMENT

---

**I. The Contracting Officer's Unilateral Declaration That Purchase Order Number SPO750-04-M-D325 Has "Lapsed" Is An Adequate Basis For Tucker Act Jurisdiction Over A Contract Disputes Act Matter.**

Defendant characterizes the Contracting Officer's communication of Monday, April 5th, 2004 as a "termination" of Purchase Order Number SPO750-04-M-D325, and from this Defendant argues that a Contracting Officer's termination decision, which generally does not concern money claims, is insufficient for this Court to assert its Tucker Act jurisdiction over a Contract Disputes Act matter. Defendant's Motion to Dismiss, at 4.

This Court's Tucker Act jurisdiction over Contract Disputes Act matters is as follows:

> The Court of Federal Claims shall have jurisdiction to render judgment upon *any claim by or against*, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2) (emphasis added).

Defendant places particular emphasis on this Court's decision in *Deponte Investments, Inc. v. United States*, 54 Fed. Cl. 112 (2002). There the General Services Administration had terminated the lease of a building in Gallup, New Mexico for default when the lessor failed to deliver occupancy in the newly-constructed building on the date agreed. *Deponte*, 54 Fed. Cl., at 113-114.

The lessor appealed from the default termination to the General Services Administration Board of Contract Appeals. Under 41 U.S.C. § 606 a Federal contractor may appeal from a contracting officer's decision to an Agency board of contract appeals provided that the Federal contractor does so within ninety calendar days from the date of the Federal contractor's receipt of the contracting officer's decision; Federal contractors may come to this Court under section 10(a)(1) of the Contract Disputes Act, 41 U.S.C. § 609(a)(1), "in lieu of appealing the decision of the contracting officer under 605 of this title to an agency board," and under 41 U.S.C. § 609(a)(3) a Federal contractor may file suit upon a contracting officer's decision with this Court provided that the Federal contractor does so within twelve months from the date of the Federal contractor's receipt of the contracting officer's decision. Before the General Services Administration Board of Contract Appeals the parties argued ab-

out the date the lessor received the contracting officer's decision because the appeal arguably had been filed later than ninety calendar days from the date of receipt of the contracting officer's decision, which had been sent to the lessor from Forth Worth, Texas by overnight delivery. The FedEx tracking report ultimately prevailed and the General Services Administration Board of Contract Appeals dismissed the appeal as untimely filed. *Deponte Investments, Inc. v. General Services Administration*, GSBCA No. 15601, August 13th, 2001, 2001 GSBCA LEXIS 209, *9-*10.

The lessor then filed suit with this Court. This Court dismissed, holding that a contractor claim for monetary damages is required for this Court to take jurisdiction under the Contract Disputes Act:

> The Federal Acquisition Regulation (FAR) defines a monetary claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." *48 C.F.R. 2.101* (2002); *see Reflectone, Inc. v. United States, 60 F.3d 1572, 1576 (Fed. Cir. 1995).* No particular language is required to state a claim under the CDA, as long as the contractor submits to the contracting officer, a "clear and unequivocal statement" providing adequate notice of the basis and amount of the claim. *Contract Cleaning Maintenance, Inc., v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987); Davies Precision Machining v. United States, 35 Fed. Cl. 651, 663, 36 Fed. Cl. 651 (1996); Cubic Corp. v. United States, 20 Cl. Ct. 610, 616 (1990).*
>
> Plaintiff has failed to establish that these jurisdictional requirements have been satisfied with respect to its claim for money damages. Plaintiff does not contend that it filed a claim for money damages with the contracting officer prior to or after the issuance of a final decision on the lease termination. Rather, relying primarily on Federal Circuit precedent related to non-CDA disputes, plaintiff argues as a matter of law that the final decision on the lease termination for default is an adequate jurisdictional substitute for a CDA claim and final decision on money damages.
>
> Plaintiff's argument that the Tucker Act provides independent jurisdiction over the money damage claim based on the final decision of termination is insupportable. The

> Federal Circuit has made it abundantly clear that a termination decision does not constitute a final decision on a money damage claim under the CDA for jurisdictional purposes. . . .

*Deponte*, 54 Fed. Cl., at 115.

Simply put, *Deponte* was wrong on the law on the day it was issued. The Tucker Act was explicitly amended in 1992 to preclude the very result that *Deponte* perpetuates:

> The government next contends that even when there is a claim and a final decision, the Tucker Act does not give the Court of Federal Claims jurisdiction over a nonmonetary claim of the sort at issue in this case. The government characterizes the limitations on the court's jurisdiction to grant nonmonetary relief in two ways. First, it argues that disputes arising "prior to the completion of work on a contract" are within the bounds of "contract administration" and thereby outside the jurisdiction of the Court of Federal Claims to grant relief. Second, the government argues that the nonmonetary disputes referred to in the Tucker Act are limited to those disputes "that otherwise would be entirely excluded from the court's jurisdiction." Jurisdiction is lacking, the government explains, over disputes that have not "ripened into a monetary dispute, but . . . could by the contractor's efforts alone." Thus, under the government's theory, a nonmonetary dispute is outside the court's jurisdiction if the contractor has not completed work on the contract and if the contractor, by doing particular designated work, could convert the claim into one for monetary relief.
>
> The government's definition of nonmonetary disputes is not supported by the language of the statute, by its legislative history, or by this court's precedents. In defining the jurisdiction of the Court of Federal Claims over CDA disputes, Congress has chosen expansive, not restrictive, language. As amended in 1992, the Tucker Act gives the Court of Federal Claims jurisdiction "to render judgment upon any claim by or against . . . a contractor under section 10(a)(1) of the Contract Disputes Act, including [certain specific kinds of non-monetary disputes], and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of the [CDA]." *28 U.S.C. § 1491*(a)(2). Significantly, that portion of the statute begins by broadly granting the court jurisdiction over "any claims"; it starts the list of specific kinds of nonmonetary disputes with a nonrestrictive term ("including"); and it ends the list with equally nonrestrictive language ("and other nonmonetary disputes"). The government's argument

> for a restrictive definition of the term nonmonetary disputes is at odds with the open-ended language used in the statute.
>
> Seeking support for its jurisdictional argument in legislative history, the government cites a statement made by Senator Heflin during the Senate's consideration of the 1992 amendments to the Tucker Act. The amendment was passed in the wake of this court's decision in *Overall Roofing & Construction, Inc. v. United States, 929 F.2d 687 (Fed. Cir. 1991),* in which the court held that the Court of Federal Claims lacked jurisdiction to review a termination for default not involving a monetary claim. While the statement of a single senator does not trump plain statutory language, the government has, in any event, read too much into Senator Heflin's comments. Senator Heflin noted that the 1992 amendment was designed to "restore the option of appealing any final decisions to either the Court of Federal Claims or agency board of contract appeals [as] was intended in the Contract Disputes Act." 138 Cong. Rec. 34,204 (1992). He cautioned, however, that the amendment was not intended to permit contractors to avoid the "dispute" and "final decision" requirements of the Act, and that it would "not permit contractors to seek injunctions or declaratory judgments that would interfere with the contracting officer's right to direct the manner of performance under the changes clause." Id.
>
> Senator Heflin's statement has been construed to mean that the 1992 amendment did not "relinquish the Government's contractual right to have the contractor perform pending resolution of disputes." *Valley View Enters., Inc. v. United States, 35 Fed. Cl. 378, 385 (1996).* That much is plainly true, as nothing in the 1992 amendment had the effect of relieving contractors of their performance obligations under the changes clause or, for that matter, the disputes clause. But the government takes Senator Heflin's remark one step further and argues that it means that a contractor who is asked to do work that the contractor believes is not required by the contract must do the work and file a claim for compensation when the work is completed. That is reading too much into Senator Heflin's comment. Nothing in his comment suggests that a contractor may not seek review of a final decision of a contractor on a claim regarding an ongoing performance issue; his remarks simply mean that the contractor may not use the appeal as an excuse to avoid its obligations under the changes clause (or the disputes clause) of continuing performance pending the resolution of the dispute by the Court of Federal Claims or an agency board of contract appeals.

*Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1268-69 (Fed. Cir. 1999). Here, the Contracting Officer's unilateral declaration of Monday, April 5th, 2004 that Purchase Order Number

SPO750-04-M-D325 has "lapsed" is a sufficient nonmonetary dispute for this Court's Tucker Act jurisdiction over Contract Disputes Act matters.

**II. On Contract Disputes Act Matters, This Court Has Tucker Act Jurisdiction Over Government Claims Just As This Court Has Tucker Act Jurisdiction Over Contractor Claims.**

Defendant reads only the subtitle of 41 U.S.C. § 605(a), "Contractor claims," and from this Defendant asserts that this Court's Tucker Act jurisdiction to hear and consider Contract Disputes Act matters extends only to Contractor claims, that "[t]he mere fact that a purchase order has been withdrawn for lapse or some other reason does not satisfy either the claim or the final decision requirement of 41 U.S.C. § 605(a)." Defendant's Motion to Dismiss, at 4-5.

Defendant needs to read beyond the subtitle, for the text of 41 U.S.C. § 605(a) covers both Contractor claims *and* Government claims:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. *All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer*. Each claim by a contractor against the government relating to a contract *and each claim by the government against a contractor* relating to a contract shall be submitted within 6 years after the accrual of the claim. The preceding sentence does not apply to a claim by the government against a contractor that is based on a claim by the contractor involving fraud. *The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor. The decision shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter. Specific findings of fact are not required, but, if made, shall not be binding in any subsequent proceeding.*

41 U.S.C. § 605(a) (emphasis added).

The cases have long since confirmed this Court's Tucker Act jurisdiction over Government claims on Contract Disputes Act matters:

> KSA argues that the contracting officer (CO) never issued a final decision on USBR's assessment of liquidated damages against KSA for late performance. Since a final decision by the CO for a government claim is a prerequisite for the government to litigate its claim in the Court of Federal Claims, see *Sharman Co. v. United States, 2 F.3d 1564, 1568-69 (Fed. Cir. 1993),* KSA asserts that the Court of Federal Claims lacked jurisdiction to entertain the government's liquidated damages claim. While we agree with KSA that the CO never issued a written final decision under the CDA on the government's claim, this deficiency does not preclude the government from litigating its liquidated damages counterclaim in the Court of Federal Claims. This exception to the rule is stated in *Placeway Construction Corp. v. United States, 920 F.2d 903 (Fed. Cir. 1990),* a precedent which governs the jurisdictional question in this case.
>
> In Placeway, the contractor Placeway entered into a contract with the United States Coast Guard to construct residential housing. After construction was completed, Placeway submitted a voucher on January 21, 1985 for the contract's unpaid balance of $297,057.12 plus compensation for various unforeseen expenses. On September 4, 1986, the CO denied Placeway's request to release the unpaid balance because Placeway had failed to complete the contract in a timely manner. In essence, the government set off its delay damages claim against the unpaid balance claimed by Placeway because Placeway's alleged delays exposed the government to liability to other contractors who might later submit delay claims against the government. Placeway then sued on its CDA claim in the Court of Federal Claims. In relevant part, the Court of Federal Claims held that because the CO failed to assert a sum certain of delay damages against Placeway, the CO had not issued a final decision necessary to invoke Court of Federal Claims' jurisdiction for review of the government's assessment of such damages. See *Placeway Constr. Corp. v. United States, 18 Cl. Ct. 159, 164-65 (1989),* aff'd-in-part and vacated-in-part, *920 F.2d 903 (Fed. Cir. 1990).*
>
> Relying on *Teller Environmental Systems, Inc. v. United States, 802 F.2d 1385, 1388-89 (Fed. Cir. 1986),* which held that a CO's decision is final if it resolves the issues of liability and damage, this court reversed the Court of Federal Claims. This court reasoned that the CO's actions constituted a CDA final decision because the CO had, with respect to the government's set-off claim, determined both liability against Placeway and damages in the amount of the unpaid contract balance of $297,057.12. Certainty as to quan-

> tum was derived from the CO's complete rejection of Placeway's claim to the unpaid balance. This was so even though the CO had reserved the right to revise the delay damages incurred by the government at some future time. Further, the CO's failure to include the boilerplate language regarding appeal rights did not affect the decision's finality. See *Placeway Constr. Corp. v. United States, 920 F.2d 903, 907 (Fed. Cir. 1990).* Placeway thus stands for the proposition that a government set-off claim will be deemed to have received a final CO decision, and thus be satisfactory for CDA jurisdictional purposes, if the CO states in writing the subject of the government's claim and the specific amount claimed for the government in the context of assessing a CDA claim made by a contractor.
>
> Placeway's requirements are met in this case. On August 10, 1989, the CO sent KSA a letter clearly detailing the government's assessment against KSA in the amount of $969,500 for liquidated damages due to KSA's failure to perform in a timely manner. As in Placeway, this communication unequivocally set forth the government's view of liability and damages due to the delay. The August 10 communication is deemed to be a valid government claim under the CDA, which vested the Court of Federal Claims with the necessary jurisdiction to entertain the government's liquidated damages claim against KSA. . . .

*Kit-San-Azusa v. United States*, Fed. Cir. Nos. 95-5070, 95-5079, May 7th, 1996 (unpublished), 1996 U.S. App. LEXIS 10370, *3-*7.

The Contracting Officer has unilaterally determined that Defense Supply Center Columbus has no liability for any of the work performed by Smart Business Machines under Purchase Order Number SPO750-04-M-D325. Such a determination is, literally, *a claim by the government against a contractor relating to a contract, viz., you, Smart Business Machines, are entitled to nothing, not even the termination promised by Federal Acquisition Regulation 13.302-4(a)(2).* More is not required for a "claim" under 41 U.S.C. § 605(a) to come within this Court's Tucker Act jurisdiction.

## CONCLUSION

For all of the reasons set forth in the foregoing Memorandum of Points and Authorities, Smart Business Machines respectfully requests that the Court deny Defendant's Motion to Dismiss, RCFC 12(b)(1), and that the Court, as previously ordered, allow separate briefing on Defendant's Motion to Dismiss, RCFC 12(b)(6), for failure to state a claim on which relief can be granted.

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112

Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Smart Business Machines.

## CERTIFICATE OF SERVICE

Pursuant to RCFC 5.1(b), I hereby certify that on Wednesday, July 6th, 2005 a true and complete copy of this Memorandum in Opposition to Defendants' Motion to Dismiss was filed electronically via the Court's Electronic Case Filing System, through which notice of the filing will be sent to:

James D. Colt, Esq.

Electronic Mail: james.colt@usdoj.gov

Attorney of record for Defendant,
United States of America.

/s/ Cyrus E. Phillips, IV

______________________________
Cyrus E. Phillips, IV