# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Number 05-447C
Judge Nancy B. Firestone

**SMART BUSINESS MACHINES,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Cyrus E. Phillips, IV
1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Attorney of record for Plaintiff,
Smart Business Machines.

November 30th, 2005

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

QUESTIONS INVOLVED .......... 1

I. DOES THE ABSENCE OF ANY AVERMENTS OF GOVERNMENT ACTS AFTER THE CONTRACTING OFFICER'S UNILATERAL DECLARATION THAT THE PURCHASE ORDER HAD "LAPSED" PRECLUDE ANY RELIEF? .......... 1

II. IS SMART BUSINESS MACHINES LIMITED TO RELIEF ONLY UPON A PURCHASE ORDER THAT COULD BE "REVIVED" AFTER THE CONTRACTING OFFICER'S UNILATERAL DECLARATION THAT THE PURCHASE ORDER HAD "LAPSED"? .......... 1

STATEMENT OF THE CASE .......... 1-5

ARGUMENT .......... 6-12

I. SMART BUSINESS MACHINES' CLAIM TO THE TERMINATION PROMISED BY FEDERAL ACQUISITION REGULATION 13.302-4(A)(2) IS NOT FORFEIT BY REASON OF FAILURE TO TENDER THE GOODS BY MARCH 30TH, 2004 .......... 6-7

II. DEFENSE SUPPLY CENTER COLUMBUS IS EQUITABLY ESTOPPED FROM CLAIMING A "LAPSE" .......... 7-12

CONCLUSION .......... 12

CERTIFICATE OF SERVICE .......... 13

## TABLE OF AUTHORITIES

**STATUTES**

41 U.S.C. §§ 601-613. . . . . 2

41 U.S.C. § 601(2). . . . . 2

41 U.S.C. § 601(4). . . . . 1

41 U.S.C. § 602(a)(1). . . . . 2

**REGULATIONS**

Federal Acquisition Regulation 13.004. . . . . 3-4

Federal Acquisition Regulation 13.302-4. . . . . 5, 6, 7

**CASES**

*Connor Brothers Construction Company , Inc. v. United States,*
65 Fed. Cl. 657 (2005). . . . . 9

*Davies Precision Machining, Inc. v. United States,*
35 Fed. Cl. 651 (1996). . . . . 6

*Emeco Industries, Inc. v. United States,*
485 F.2d 652 (Ct. Cl. 1973). . . . . 10-11

*Rex Systems, Inc.,*
ASBCA No. 45301, May 26th, 1993, 1993 ASBCA LEXIS 184. . . . . 6-7

# PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

## QUESTIONS INVOLVED

I. Does the absence of any averments of Government acts after the Contracting Officer's unilateral declaration that the Purchase Order had "lapsed" preclude any relief?

II. Is Smart Business Machines limited to relief only upon a Purchase Order that could be "revived" after the Contracting Officer's unilateral declaration that the Purchase Order had "lapsed?"

## STATEMENT OF THE CASE

**Parties**.

Smart Business Machines is an Ohio sole proprietorship. Smart Business Machines is the awardee of Purchase Order Number SPO750-04-M-D325, and thus a proper "Contractor" under the Contract Disputes Act, 41 U.S.C. § 601(4). Purchase Order Number SPO750-04-M-D325 was issued on November 26th, 2003 by a Contracting Officer at Defense Supply Center Columbus, a field activity of the Defense Logistics Agency at Columbus, Ohio. Defense Logistics Agency is a United States Department of Defense Agency. Defendants Defense Supply Center Columbus, Defense Logistics Agency, and the United States Department of Defense are agencies and entities of the United States,

and the United States Department of Defense is a proper "Executive Agency" under the Contract Disputes Act, 41 U.S.C. § 601(2). Purchase Order Number SPO750-04-M-D325 is an express unilateral option contract entered into by an Executive Agency for the procurement of property, and thus an Executive Agency Contract to which the Contract Disputes Act applies, 41 U.S.C. § 602(a)(1). Complaint, ¶ 2.

**The Unilateral Purchase Order**.

On November 26th, 2003 a Contracting Officer at Defense Supply Center Columbus issued Purchase Order Number SPO750-04-M-D325 to Smart Business Machines. As issued, Purchase Order Number SPO750-04-M-D325 is a unilateral offer subject to the Contract Disputes Act, 41 U.S.C. §§ 601-613. Purchase Order Number SPO750-04-M-D325 contains the Disputes (July 2002) clause. Complaint, ¶ 5.

Purchase Order Number SPO750-04-M-D325 requires delivery of other than commercial items, *viz.* one-hundred fifty-five cast steel driving-nondriving wheel spindles to be built to designated United States Army Tank-Automotive Command drawings and to be inspected in accordance with Department of Defense Handbook MIL-HDBK-1265, entitled "Radiographic Inspection, Classification and Soundness Requirements for Steel Castings," dated August 19th, 1998. Delivery was to be made on or before March 30th, 2004. Inspection and acceptance of these one-hundred fifty-five cast steel driving-nondriving wheel spindles, other than commercial items, is to be at origin, at Smart Business Machines' production facility in Eastlake, Ohio. Upon delivery, Smart Business Machines is

to be paid $397.00 for each of these cast steel driving-nondriving wheel spindles, other than commercial items, or $61,535 total for one-hundred fifty-five cast steel driving-nondriving wheel spindles, other than commercial items. Complaint, ¶ 6.

**Substantial Performance**.

By March 19th, 2004 Smart Business Machines had substantially performed Purchase Order Number SPO750-04-M-D325. Smart Business Machines had by then received the completed steel castings at a cost of some $15,500, and had machined two of the cast steel driving-nondriving wheel spindles and was ready to assemble these components, at a cost of some $4,000.00. Representatives of the Administrative Contracting Officer had visited Smart Business Machines' Eastlake, Ohio production facility and were aware that Smart Business Machines had proceeded with the work to the point that substantial performance had occurred. Complaint, ¶ 7.

The Federal Acquisition Regulation provides:

> (a) A quotation is not an offer and, consequently, cannot be accepted by the Government to form a binding contract. *Therefore, issuance by the Government of an order in response to a supplier's quotation does not establish a contract. The order is an offer by the Government to the supplier to buy certain supplies or services upon specified terms and conditions. A contract is established when the supplier accepts the offer.*
>
> (b) When appropriate, the contracting officer may ask the supplier to indicate acceptance of an order by notification to the Government, preferably in writing, as defined at 2.101. *In other circumstances, the supplier may indicate acceptance by furnishing the supplies or services ordered or by proceeding with the work to the point where substantial performance has occurred.*
>
> (c) If the Government issues an order resulting from a quotation, the Government may (by written notice to the supplier, at any time before acceptance occurs) withdraw,

> amend, or cancel its offer. (See 13.302-4 for procedures on termination or cancellation of purchase orders.)

Federal Acquisition Regulation [48 C.F.R.] 13.004, "Legal Effect of Quotations" (emphasis added).

**The Unlawful Termination**.

On Monday, April 5th, 2004 the Contracting Officer at Defense Supply Center Columbus wrote Smart Business Machines that:

> The above cited purchase order was an offer to purchase the supplies described therein provided that delivery was made by 03/30/2004. Since that date was not met, the Government's offer to purchase has lapsed. No deliveries will be accepted by the Government under this order for the CLIN(s):

| CLIN | NSN/Part Number | From Quantity | To Quantity | Destination |
|---|---|---|---|---|
| 0001 | 2530-01-102-4765 | 12 | 0 | SW3218 |
| 0002 | 2530-01-102-4765 | 100 | 0 | W25G1U |
| 0003 | 2530-01-102-4765 | 43 | 0 | W62G2T |

> Total amount of contract/order is ( ) increased (X) decreased by $61535.00 from $61535.00 to $ 0.00.
>
> *Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains in full force and effect.*

Purchase Order Number SPO750-04-M-D325, Modification Number P00001, April 5th, 2004 (emphasis added). Smart Business Machines received a facsimile of this Modification Number P00001 on the day that it was issued, Monday, April 5th, 2004. Complaint, ¶ 8.

As to terminations or cancellations of Purchase Orders, the Federal Acquisition Regulation provides:

> (a) If a purchase order that has been accepted in writing by the contractor is to be terminated, the contracting officer shall process the termination in accordance with—
> (1) 12.403(d) and 52.212-4(l) for commercial items; or
> (2) Part 49 or 52.213-4 for other than commercial items.
>
> (b) *If a purchase order that has not been accepted in writing by the contractor is to be canceled, the contracting officer shall notify the contractor in writing that the purchase order has been canceled, request the contractor's written acceptance of the cancellation, and proceed as follows*:
> (1) If the contractor accepts the cancellation and does not claim that costs were incurred as a result of beginning performance under the purchase order, no further action is required (*i.e.*, the purchase order shall be considered canceled).
> (2) *If the contractor does not accept the cancellation or claims that costs were incurred as a result of beginning performance under the purchase order, the contracting officer shall process the termination action as prescribed in paragraph (a) of this subsection.*

Federal Acquisition Regulation [48 C.F.R.] 13.302-4, "Termination or Cancellation of Purchase Orders" (emphasis added).

The Contracting Officer at Defense Supply Center Columbus did not, as required by Federal Acquisition Regulation 13.302-4(b), request Smart Business Machines' written acceptance of the cancellation before unilaterally declaring that Purchase Order Number SPO750-04-M-D325 had "lapsed." Complaint, ¶ 14.

## ARGUMENT

**I. Smart Business Machines' Claim To The Termination Promised By Federal Acquisition Regulation 13.302-4(a)(2) Is Not Forfeit By Reason Of Failure To Tender The Goods By March 30th, 2004.**

Defense Supply Center Columbus argues that Purchase Order Number SPO750-04-M-D325 "lapsed" when Smart Business Machines failed to tender the goods by March 30th, 2004, and that in the absence of averments of Government acts encouraging performance after March 30th, 2004, Smart Business Machines has advanced no Claim upon which relief can be granted, there now being no express, or "revived," Contract. Defendant's Motion to Dismiss, at 6.

Defense Supply Center Columbus cites the Court to *Davies Precision Machining, Inc. v. United States*, 35 Fed. Cl. 651, 660 (1996). *Id.* In its Order Denying Dismissal For Lack of Jurisdiction on November 8th, 2005, the Court has ordered both parties to address *Rex Systems, Inc.*, ASBCA No. 45301, May 26th, 1993, 1993 ASBCA LEXIS 184 and the question whether the Government's obligation to terminate a Purchase Order under Federal Acquisition Regulation 13.302-4 ends when the Purchase Order lapses, i.e., when the Contractor does not tender goods or services on or before the date set out in the Purchase Order.

*Rex Systems,* 1993 ASBCA LEXIS 184 *13-*15, and other cases in the Boards of Contract Appeal have proposed that any Government obligations under Federal Acquisition Regulation 13.302-4 end when the Contractor does not tender goods or services on or before the date set out

in the Purchase Order. Per these cases, after the date set out in the Purchase Order has come and gone without a tender of goods or services, an express Contract upon which relief can be granted under the Contract Disputes Act exists only in those circumstances where the Government thereafter acted to encourage continued performance, or where "timely performance was excusably delayed." *Id.*, 1993 ASBCA LEXIS 184 *13.

The holdings in these cases are not reflected in the Federal Acquisition Regulation. Per Federal Acquisition Regulation 13.004(b), Purchase Orders may be accepted by substantial performance. Per Federal Acquisition Regulation 13.302-4(b)(2), Claims that costs were incurred as a result of beginning performance under a Purchase Order are to be processed as termination Claims, and there is nothing in the Federal Acquisition Regulation that limits these Claims to cases where the date set out in the Purchase Order has not "lapsed". The concept of "lapse" is unknown to the Federal Acquisition Regulation. Smart Business Machines may properly insist on enforcement of the obligations imposed on Defense Supply Center Columbus by the Federal Acquisition Regulation. Smart Business Machines may not be denied rights flowing from these obligations based on holdings in cases in the Boards of Contract Appeal that are not known to, or reflected in, the Federal Acquisition Regulation.

**II. Defense Supply Center Columbus Is Equitably Estopped From Claiming A "Lapse."**

If Smart Business Machines had proceeded with substantial performance under Purchase Order Number SPO750-04-M-D325, but representatives of the Administrative Contracting Officer,

or the Contracting Officer at Defense Supply Center Columbus, were unaware of these activities, then Defense Supply Center Columbus could lawfully have terminated Purchase Order Number SPO750-04-M-D325 on April 5th, 2004 as "lapsed," and Smart Business Machines would have no rights under Purchase Order Number SPO750-04-M-D325. But that is not this case.

Smart Business Machines had by March 19th, 2004 received completed steel castings at a cost of some $15,500, and had machined two of the cast steel driving-nondriving wheel spindles and was ready to assemble these components, at a cost of some $4,000.00. Representatives of the Administrative Contracting Officer had visited Smart Business Machines' Eastlake, Ohio production facility and were aware that Smart Business Machines had proceeded with the work to the point that substantial performance had occurred.

And it needs to be remembered that Purchase Order Number SPO750-04-M-D325 requires delivery of other than commercial items, *viz.* one-hundred fifty-five cast steel driving-nondriving wheel spindles to be built to designated United States Army Tank-Automotive Command drawings and to be inspected in accordance with Department of Defense Handbook MIL-HDBK-1265, entitled "Radiographic Inspection, Classification and Soundness Requirements for Steel Castings," dated August 19th, 1998.

All of the requisite elements of an equitable estoppel are present here—Defense Supply Center Columbus is barred from claiming that Purchase Order Number SPO750-04-M-D325 had "lapsed" by April 5th, 2004 because Smart Business Machines had not then tendered the one-hundred

fifty-five cast steel driving-nondriving wheel spindles to be built to designated United States Army Tank-Automotive Command drawings:

> The doctrine of equitable estoppel bars a party from raising a defense or an objection it otherwise would have. *Biagioli, 2 Cl. Ct. at 307* (quoting *Jablon v. United States, 657 F.2d 1064, 1068 (9th Cir. 1981)*). The affirmative defense of equitable estoppel requires that the asserting party reasonably relied upon the conduct of the estopped party. *Henry v. United States, 870 F.2d 634, 636-37 (Fed. Cir. 1989)*. The elements of equitable estoppel are: (1) *misleading conduct, which may include not only statements and action but silence and inaction, leading another to reasonably infer that rights will not be asserted against it*; (2) reliance upon this conduct; and (3) due to this reliance, material prejudice if the delayed assertion of such rights is permitted. *Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc., 971 F.2d 732, 734 (Fed. Cir. 1992)*; *see also A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1041 (Fed. Cir. 1992)* (stating that this formulation of the three elements of equitable estoppel "reflects a reasonable and fairly complete distillation from the case law"). An explicit representation is not a necessary precondition for a finding of equitable estoppel. *Hercules Inc. v. United States, 49 Fed. Cl. 80, 88 (2001)*, *aff'd*, *292 F.3d at 1378*. Estoppel may lie for a course of conduct, without misrepresentation, by the estopped party. *Id.* "'*This latter view is in accord with those cases that hold that a party who engages in a course of conduct, even without misrepresentation, upon which another party has a right to believe he is intended to act or upon which the first party intends him to act, will be estopped from repudiating the effect of such conduct.*'" *Id.* (citing *Emeco Indus., Inc. v. United States, 485 F.2d 652, 657, 202 Ct. Cl. 1006 (Ct. Cl. 1973)*). In addition to these requisites, it is an established proposition that estoppel cannot be set up against the government on the basis of an unauthorized representation or act of an officer or employee who is without authority in his individual capacity to bind the government. *See Byrne Org., Inc. v. United States, 287 F.2d 582, 587, 152 Ct. Cl. 578 (Ct. Cl. 1961)*.

*Connor Brothers Construction Company, Inc. v. United States*, 65 Fed. Cl. 657, 693 (2005) (emphasis added).

If after March 19th, 2004 (when Smart Business Machines had substantially performed) Defense Supply Center Columbus would still insist on a tender by March 30th, 2004, then the required mis-

leading conduct is the silence and inaction by the representatives of the Administrative Contracting Officer who had visited Smart Business Machines' Eastlake, Ohio production facility and were aware that Smart Business Machines had proceeded with the work to the point that substantial performance had occurred—they should have said something then, but they did not. Smart Business Machines relied on this silence and inaction to its detriment, incurring some $15,500 for the required castings and spending some $4,000 on machining. These one-hundred fifty-five cast steel driving-nondriving wheel spindles are other than commercial items, i.e., there is no commercial market for them. To now allow Defense Supply Center Columbus to claim that Purchase Order Number SPO-750-04-M-D325 had "lapsed" by April 5th, 2004 will materially prejudice Smart Business Machines. And surely it is beyond cavil that these representatives of the Administrative Contracting Officer had the requisite authority to represent the Contracting Officer at Defense Supply Center Columbus in their dealings with Smart Business Machines and had the requisite authority to visit Smart Business Machines' Eastlake, Ohio production facility.

The facts here are much like the facts in *Emeco Industries, Inc. v. United States*, 485 F.2d 652 (Ct. Cl. 1973). There a Contractor had spent $10,300 for the necessary dies to make steel index card boxes, and the Contractor had ordered the materials necessary to fabricate the entire requirement of the General Services Administration, a requirement for the manufacture of 31,896 steel index card boxes. The Contractor had submitted the low bid at public bid opening, and the Contractor's plant had been subjected to a pre-award survey, a pre-award survey not necessary for Contracts less than

$10,000. The General Services Administration knew that the Contractor had not previously manufactured steel index card boxes and thus would have to purchase dies to make them. And the General Services Administration knew that the Contractor's bid of $3.04 per steel index card box was an average that took into consideration the costs of manufacturing the entire requirement of 31,896 steel index card boxes. When the Contractor received an order for 2,713 steel index card boxes at a total of $8,247.52, the Contractor assumed that the additional orders would follow. Only thereafter did the Contractor learn that the General Services Administration had accepted a late bid on a partial quantity of the requirement, and had awarded two Contracts, one for 29,183 steel index card boxes at $2.78 each, and one for the remaining quantity, 2,713 steel index card boxes at $3.04 each.

Per the *Emeco Industries* Court, it was the General Service Administration's failure to speak up when it should have that required an equitable estoppel to preclude the General Services Administration from denying the existence of a Contract for the entire requirement of 31,896 steel index card boxes:

> Under the circumstances of this case, it is important to stress the failure of the defendant to inform plaintiff of the receipt of Art Steel's late bid, for only when it is kept clearly in mind is one able to understand why plaintiff acted as it did. Along the same line, it is important to refrain from evaluating plaintiff's acts from a hindsight vantage point, based on all the facts, since the facts were not known to plaintiff at the time it acted.

*Id.*, 485 F.2d 652, at 658-659. Here, the silence and inaction by representatives of the Administrative Contracting Officer precluded Smart Business Machines from doing anything after March 19th, 2004 other than proceeding with performance of Purchase Order Number SPO750-04-M-D325. By rea-

son of this silence and inaction, Defense Supply Center Columbus is here equitably estopped from asserting that Purchase Order Number SPO750-04-M-D325 had "lapsed" by April 5th, 2004.

---

## CONCLUSION

---

For all of the reasons set forth in the foregoing Memorandum of Points and Authorities, Smart Business Machines respectfully requests that the Court deny Defendant's Motion to Dismiss for failure to state upon which relief can be granted, RCFC 12(b)(6).

Respectfully submitted,

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112

Telephone: (202) 466-7008
Facsimile: (202) 466-7009
Electronic Mail: lawyer@procurement-lawyer.com

Attorney of record for Plaintiff,
Smart Business Machines.

## Certificate of Service

Pursuant to RCFC 5.1(b), I hereby certify that on Wednesday, November 30th, 2005 a true and complete copy of this Memorandum in Opposition to Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted was filed electronically via the Court's Electronic Case Filing System, through which notice of the filing will be sent to:

James D. Colt, Esq.

Electronic Mail: james.colt@usdoj.gov

Attorney of record for Defendant,
United States of America.

/s/ Cyrus E. Phillips, IV

Cyrus E. Phillips, IV