# In the United States Court of Federal Claims

**No. 05-447C**
**(Filed: February 9, 2006)**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * | * | |
| | * | |
| **SMART BUSINESS MACHINES,** | * | |
| | * | |
| **Plaintiff,** | * | **Purchase Order; 48 C.F.R. § 13.302-4;** |
| | * | **48 C.F.R. § 52.213-4(f); Equitable** |
| **v.** | * | **Estoppel; Substantial Performance** |
| | * | |
| **THE UNITED STATES,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * | | |

*Cyrus E. Phillips, IV*, Washington, DC, for plaintiff.

*James D. Colt*, U.S. Department of Justice, Washington, DC, with whom were *Peter D. Keisler*, *Assistant Attorney General* and *Director David M. Cohen*, for defendant.

## ORDER OF DISMISSAL

This case comes before the court on the motion of the defendant, the United States ("government" or "United States"), to dismiss the complaint of the plaintiff, Smart Business Machines ("SBM" or "plaintiff"), pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). The government argues that SBM has failed to state a claim for relief in connection with a purchase order that the government

contends “lapsed” when SBM failed to timely furnish the subject supplies. SBM contends that the government erred in failing to follow the procedures specified in the Federal Acquisition Regulations (“FAR”) with respect to cancellation or termination of a purchase order, 48 C.F.R. § 52.213-4(f) (2005). SBM also argues that the government should be estopped from claiming that the purchase order lapsed. For the reasons set forth below, the government’s motion is **GRANTED** and the plaintiff’s complaint must be dismissed.

## STATEMENT OF FACTS

For purposes of this motion, the following facts taken from SBM’s April 5, 2005 complaint are deemed true. The court previously summarized the facts in its November 8, 2005 Order Denying Dismissal for Lack of Jurisdiction. The relevant facts for the purposes of the government’s motion to dismiss pursuant to RCFC 12(b)(6) are as follows. On November 26, 2003, a contracting officer of the United States Department of Defense (“Department of Defense”) issued a purchase order to SBM. The purchase order required delivery of 155 steel cast spindles. By the terms of the purchase order, the spindles were to have been delivered on or before March 30, 2004. Upon delivery, SBM was to be paid $61,535 total for the 155 spindles.

On March 19, 2004, representatives of the contracting officer visited SBM’s production facility and learned that SBM had begun work on the spindles. By March 19, 2004, SBM had received the completed steel castings, had machined two of the spindles, and was ready to assemble these components. SBM had incurred costs of $19,400.

It is not disputed that on March 30, 2004, SBM failed to deliver any of the spindles

to the government. On April 5, 2004, the contracting officer wrote SBM that the purchase order "was an offer to purchase the supplies described therein provided that delivery was made by 03/30/2004. Since the date was not met, the Government's offer to purchase has lapsed. No deliveries will be accepted by the Government under this order . . . ." Modification P00001, April 5, 2004.

On April 5, 2005, SBM filed a complaint in this court seeking declaratory and injunctive relief under the Contract Disputes Act, 41 U.S.C. § 609(a)(1) (2000). The government moved to dismiss the complaint pursuant to RCFC 12(b)(1) and 12(b)(6). The court postponed briefing on the government's 12(b)(6) motion to dismiss pending the outcome of the government's 12(b)(1) motion to dismiss. On November 8, 2005, the court denied the government's motion to dismiss for lack of jurisdiction under RCFC 12(b)(1) and ordered the parties to finish briefing on the government's motion to dismiss for failure to state a claim under RCFC 12(b)(6).

Oral argument was held on February 6, 2006.

## DISCUSSION

### I. Standard of Review

The government has filed a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(6). "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader . . . . '[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In other words, the issue is whether the plaintiff is "entitled to offer evidence to support the claims." Id.

**II. The FAR Purchase Order Cancellation and Termination Provisions Do Not Provide a Basis for a Claim in this Case.**

SBM contends that the government's April 5, 2004 notice that the purchase order lapsed when SBM failed to make delivery was unlawful because the government failed to seek SBM's acceptance of the "cancellation" in accordance with 48 C.F.R. § 13.302-4. SBM claims that under 48 C.F.R. § 13.302-4(b) the government must obtain a contractor's acceptance of the termination or cancellation of a purchase order, and if a contractor does not accept the cancellation or claims that costs were incurred under the purchase order, the contracting officer shall process the termination action in accordance with 48 C.F.R. § 52.213-4(f). SBM seeks an injunction requiring the government to proceed with the termination of the purchase order under 48 C.F.R. § 52.213-4(f), which provides that a percentage of the contract price and reasonable charges be paid to a contractor where a contract is terminated for the government's convenience.

The government contends that SBM is not entitled to recovery under 48 C.F.R. § 13.302-4 because the government did not cancel or terminate the purchase order in this case. The government asserts that a "cancellation" or a "termination" requires an action by the government to change an offer that still has the possibility of being accepted. The government argues that "lapse," on the other hand, does not involve any government

action. The government argues that here, after the delivery date specified in the purchase order had passed, the offer could no longer be accepted. Thus, the government contends, the subject purchase order lapsed by its own terms when SBM failed to timely provide the spindles. The government argues that in such cases, the supplier bears the cost of non-performance.

In support of its position, the government relies on Davies Precision Machining, Inc. v. United States, 35 Fed. Cl. 651 (1996) and several decisions of the Armed Services Board of Contract Appeals ("ASBCA"), which have consistently held that issuance by the government of a purchase order does not constitute a contract, but is an offer by the government to the supplier to buy certain goods or services upon specified terms and conditions.

Where, as here, acceptance of the offer by the supplier in writing is not required, issuance of the contract is considered an offer to enter into a unilateral contract. It is generally recognized that until the date specified for performance in the purchase order, the government is bound to keep the offer open and faces potential liability if it terminates the offer. Appeal of Rex Sys., Inc., A.S.B.C.A. No. 45,301, 93-3 B.C.A. ¶ 26,065, 1993 WL 190365, at *6 (May 26, 1993). However, it is also generally recognized that if the date for performance arrives and the supplier fails to tender complete performance as required in the purchase order, the unilateral contract lapses. Id. In such cases, the ASBCA has consistently held that the supplier bears the costs of non-performance and the government is not liable for the costs the supplier incurred in endeavoring to comply. Id.

In this connection, the government argues that this case is very similar to Rex Systems. In Rex Systems, the government had issued a purchase order for thirteen counter rewind assemblies, to be delivered to the government by May 4, 1992. Id. at *2. On May 1, 1992, the contractor sent the thirteen assemblies to its subcontractor for packaging and delivery to the government. Id. at *3. On May 4, 1992, the government had not received the thirteen assemblies. Id. On May 5, the government advised the contractor that the government's purchase order had lapsed when the contractor failed to deliver by the delivery date. Id. The government received the thirteen assemblies on May 14, 1992. Id. The government returned the assemblies to the contractor and denied the contractor's request for payment. Id. at *4.

Thereafter, Rex Systems sought payment on the ground that it had substantially complied with the purchase order and was entitled to damages. The ASBCA rejected the contractor's contention that its performance constituted acceptance of the purchase order thereby creating a contract that could only be terminated pursuant to the procedures set forth in the FAR. Id. at *6. The ASBCA reasoned that the government was "obligated to keep its offer open until 4 May 1992 by virtue of appellant's initiation of a substantial part of the requested performance," but "[t]hereafter, the offer represented by the purchase order lapsed in accordance with its terms." Id. (quotations omitted). The ASBCA stated, "When the date specified for performance of an offer to enter into a unilateral contract arrives, and complete performance in accordance with the terms of that offer has not been tendered, the offer lapses and terminates by virtue of the conditions stated in the offer."

Id. at *6 (citing Restatement of Contracts § 35(1)(b) (1932)). Based on this reasoning, the ASBCA concluded that the contractor was not entitled to recovery.

The court agrees with the government that the plaintiff has failed to state a claim for relief under 48 C.F.R. § 13.302-4, on the grounds that the subject purchase order lapsed when SBM failed to deliver the spindles. It is true, as the plaintiff states, that 48 C.F.R. § 13.302-4(b) provides for payment when a purchase order is cancelled. 48 C.F.R. § 13.302-4(b) states, in relevant part:

> If a purchase order that has not been accepted in writing by the contractor is to be canceled, the contracting officer shall notify the contractor in writing. . . . and request the contractor's written acceptance of the cancellation, and proceed as follows: (1) If the contractor accepts the cancellation and does not claim that costs were incurred as a result of beginning performance . . . no further action is required . . . (2) If the contractor does not accept . . . or claims that costs were incurred as a result of beginning performance . . . the contracting officer shall process the termination action as prescribed [under 48 C.F.R. § 52.213-4].

However, the purchase order in this case was not "cancelled." Instead, as the government argues, the purchase order in this case "lapsed" when SBM failed to deliver the required spindles by the date specified in the purchase order.

The court concurs in the reasoning of the ASBCA in Rex Systems and several subsequent cases in which it has held that when a supplier fails to tender performance in accordance with the terms and conditions of a purchase order, the order lapses and the contractor bears the costs of its non-performance. See Appeal of Friedman Enter., Inc., A.S.B.C.A. No. 54886, 05-2 BCA ¶ 32991, 2005 WL 1385135 (June 3, 2005); Appeal of Alsace Indus. Inc., A.S.B.C.A. No. 51709, 99-1 BCA ¶ 30227, 1999 WL 61201 (January

29, 1999).[1] Thus, 48 C.F.R. § 13.302-4 protects suppliers in cases where the government cancels or terminates a purchase order before the supplier has had an opportunity to comply with the purchase order's delivery date. In those cases, the government is liable for its decision to terminate its offer. However, where, as here, the supplier was given the opportunity to comply with the order but admittedly failed to comply after the time for performance had passed, the purchase order lapsed and the plaintiff bears the costs of its own lack of performance.

## III. SBM Did Not Provide "Substantial Performance" Within the Meaning of 48 C.F.R. § 13.004(b).

To the extent that SBM's complaint can be read to state that SBM's "performance" established a contract with the government, that claim also fails. SBM argues in its brief that under 48 C.F.R. § 13.004(b) purchase orders may be accepted by "substantial performance." SBM then goes on to suggest that its performance qualified as "substantial performance."

The government contends in response that SBM's performance was not substantial and therefore SBM did not accept the government's unilateral offer and a contract was not created. The government contends that in order to state a claim for substantial performance, the supplier must allege that the government received what it has bargained

[1] Both Friedman Enterprises and Alsace Industries involved situations where the contractors had failed to deliver by the date specified in the unilateral purchase orders issued by the government. In each case, the ASBCA held that the purchase orders had lapsed when the contractors failed to deliver according to the terms of the purchase orders, and that the contractors bore the costs of non-performance. 2005 WL 1385135, at *12; 1999 WL 61201, at *7.

for under the purchase order. In support of this contention the government relies on PCL Constr. Servs., Inc. v. United States, 47 Fed. Cl. 745, 810 (2000) and Blinderman Constr. Co. v. United States, 39 Fed. Cl. 529, 571-572 (1997), as well as cases cited therein, which provide that substantial performance is tantamount to full compliance. See Franklin E. Penny Co. v. United States, 524 F.2d 668, 677 (Ct. Cl. 1975) (quoting In Re Kinney Aluminum Co., 78 F. Supp. 565, 568 (S.D. Calif. 1948)) ("Substantial performance 'is never properly invoked unless the promisee has obtained to all intents and purposes all benefits which he reasonably anticipated receiving under the contract.'"); H.L.C. & Assoc. Constr. Co. v. United States, 367 F.2d 586, 600 (Ct. Cl. 1966) (stating that recovery was permitted in cases where substantial performance had been "tantamount . . . to full compliance," but not where there has been a "clear and admitted deviation"). Here, the government concludes, because SBM did not provide the government with any of the 155 ordered spindles within the time prescribed in the purchase order SBM cannot claim that it "substantially performed."

The court agrees with the government that SBM has not stated a claim for relief based on substantial performance. Here, there is no dispute that when the delivery date specified in the purchase order passed, the government had not received any benefit whatsoever. Having failed to provide the government with any of the spindles, SBM has failed to state a claim for relief based on a theory of substantial performance.

**IV. Plaintiff Has Failed to State an Equitable Estoppel Claim Against the Government.**

The doctrine of equitable estoppel is a judicial remedy by which a party may be precluded, by its own acts or omissions, from asserting a right to which it otherwise would have been entitled. Conner Bros. Constr. Co. v. United States, 65 Fed. Cl. 657, 692 (2005). "Where a plaintiff claims equitable estoppel against the government, in order to warrant judicial intervention and prevail, the party invoking the doctrine against the United States bears a heavy burden to prove the elements of estoppel." Id. (citing Heckler v. Cmty. Health Servs. of Crawford County, Inc., 467 U.S. 51, 61 (1984)). The Federal Circuit has held that some form of "affirmative misconduct" must be shown in addition to the traditional requirements of estoppel when an equitable estoppel claim is asserted against the government. Zacharin v. United States, 213 F.3d 1366, 1371 (2000).

SBM contends that it is entitled to recovery under 48 C.F.R. § 13.302-4 because the government should be estopped from allowing the purchase order to "lapse." Specifically, SBM contends that estoppel is appropriate here because on March 19, 2004, government representatives visited SBM's production facility and witnessed the extent of SBM's performance. SBM contends that following the visit the government did not inform SBM that it would insist on delivery by March 30, 2004. SBM alleges that it relied on the government's silence and that the government should therefore be estopped from claiming that the purchase order lapsed.

In support of its argument, SBM cites Emeco Industries, Inc. v. United States, 485 F.2d 652 (Ct. Cl. 1973), for the proposition that the government's silence may be used to establish estoppel in appropriate cases. In Emeco Industries, the government issued a

solicitation for the manufacture of 31,896 index card boxes. Id. at 653. The government requested a plant inspection report to determine if the plaintiff's facilities were capable of producing the entire 31,896 boxes within the time specified in the solicitation. Id. The report noted that the contractor had made arrangements to purchase four dies, at a total cost of $10,300, which were essential for it to manufacture the boxes. Id. The government issued a purchase order to the contractor for 2,713 boxes, at a total price of $8,247.52. Id. at 654. The contractor began producing boxes, and intending to manufacture all of the 31,896 called for in the government's original solicitation, continued producing boxes beyond the 2,713 boxes called for in the purchase order. Id. Unbeknownst to the contractor, the government had placed an order with another company for the remaining 29,183 boxes. Id. By the time the contractor learned that the government had contracted with another company for the remaining boxes, the contractor had produced 6,000 boxes over the 2,713 required in the government's purchase order. Id.

The Emeco Industries court agreed with the government that the parties had not entered into a formal contract for 31,896 boxes. Id. at 656. However, the court held that the government was estopped from denying the existence of a contract for 31,896 boxes. Id. at 657. The court stated that in order for estoppel to apply, all of the following four elements must be present: "(1) The party to be estopped must know the facts; (2) it must intend that its conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." Id. The court stated that estoppel

was appropriate because all of the essential elements were present under the circumstances: the government had failed to notify the contractor that the government was considering a lower bid from another company, id.; the government had requested an inspection report as to whether the contractor was capable of manufacturing the full number of boxes within 70 days after being awarded the contract, id. at 658; the government was aware that it was necessary for the contractor to purchase dies at a cost of over $10,000 in order to be able to perform the contract, and it was “inconceivable” that the contractor would have incurred such an expense if it had known that it would only receive an $8,247.52 award, id.; the government had conducted an on-site inspection, which is not normally done where contracts of less than $10,000 are involved, id. at 659; the contractor was unaware that the government had awarded a contract to another company for the remaining number of boxes, id.; and the contractor had relied on the government’s acts to its detriment by ordering dies at a cost of $10,300 and by ordering material for the production of the entire quantity of boxes. Id.

SBM contends that, as in Emeco Industries, following the March 19, 2004 visit by government representatives, the government’s silence led SBM to believe that it would be allowed to finish the spindles and receive payment even if SBM missed the purchase order’s delivery date. Because the government did not inform SBM that it would hold SBM to the delivery date, SBM contends that estoppel should apply here.

The government contends that SBM has not stated a claim for estoppel in this case and that all of the elements of estoppel are not present here. The government distinguishes

Emeco Industries, noting that, in this case, in contrast to Emeco Industries, SBM has not alleged that the government knew something of which SBM was unaware. The government also argues that SBM has not alleged that the government led SBM to believe that late delivery would be acceptable. In such circumstances, the government argues that SBM has failed to allege any basis upon which the government could be estopped from allowing the purchase order to lapse by its own terms when SBM failed to make delivery of the spindles in accordance with the terms of the purchase order.

The court agrees with the government that SBM has failed to state a claim for relief based on the doctrine of equitable estoppel because the elements of estoppel are not present here and, most importantly, because there is no indication of any "affirmative misconduct" by the government. As the government states, SBM does not allege that the government indicated that the delivery date specified in the purchase order was not binding. The fact that government representatives saw that SBM was working toward compliance with the order on March 19, 2004 does not, without more, suggest that the government representatives tacitly agreed to extend the deadline. Under the facts of this case, the government's mere silence – given the fact that the delivery date was clearly specified in the purchase order – cannot justify estopping the government from claiming that the purchase order had lapsed.

## CONCLUSION

For all of these reasons, the government's motion to dismiss is **GRANTED**. The Clerk of Court is directed to enter an appropriate judgment of dismissal. Each party shall

bear its own costs.

**IT IS SO ORDERED**

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge